UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>JEROME MICHAEL BELL and DESHAWN WALKER,<br><br>Defendant(s). | Case No. 2:15-CR-11 JCM (CWH)<br><br>ORDER |

Presently before the court are the report and recommendation of Magistrate Judge Carl Hoffman. (Doc. # 45). Defendant Deshawn Walker filed objections to the report and recommendation. (Doc. # 47). The government filed a response, to which defendant did not reply. (Doc. # 49).[1]

**I.   Background**

On January 2, 2015, at about 8:44 A.M., two men entered the Town & Country Bank at 10200 West Charleston Boulevard, Las Vegas, Nevada. FBI Agent James Mollica testified that he was informed that the bank robbery was committed by two black males. He received surveillance pictures from the bank that showed two suspects. One of the suspects was wearing a white hockey mask, and the other was wearing a red bandana. Both suspects were wearing dark pants, dark sweatshirts with hoods, and black shoes with white soles. The suspects took $4,800, which contained an electronic tracking device.

---

[1] The government's response does not respond substantively to Mr. Walker's objections. Instead, the government states that it will rely on Judge Hoffman's findings and conclusions, as well as its previous response (doc. # 28) to defendant's underlying motion to suppress. (*See* doc. # 49).

**James C. Mahan**
**U.S. District Judge**

Officers from the Las Vegas Metropolitan Police Department ("Metro") followed the signal from the tracking device to a lime colored Kia Soul automobile carrying two black males. Officers pursued the Kia, and it eventually crashed into another vehicle at the intersection of Searles and Bruce Streets in Las Vegas. Defendant Jerome Bell was apprehended at the scene of the crash, but the other individual in the vehicle was not located.

Neither the money nor the electronic tracker were in the Kia, but the electronic tracking device was still showing movement in the vicinity. The police therefore set up a perimeter to contain the second suspect. Nearby residents began calling police dispatch to report a black male moving through the neighborhood and jumping walls. At least one caller reported that the black male was wearing a brown and white striped shirt and carrying a backpack.

Officer John Jenkins, a Metro officer who patrols with a K-9 unit, arrived in the area where other officers had formed a perimeter and participated in the search for the second suspect with his K-9. Officer Jenkins entered the backyard of a home on East Ryan Avenue and came upon a small shed with its door open. The K-9 entered the shed and bit Walker, who was hiding behind a large bag in the shed.

Officer Jenkins ordered Walker to show his hands, and when he failed to do so, Officer Jenkins pulled on the dog's leash and subsequently pulled both the dog and Walker out of the shed. Officer Jenkins noted that Walker's clothing matched the description of the clothing of the individual reported by dispatch—a brown and white striped shirt. Walker was placed in handcuffs and detained by a backup officer.

Agent Mollica testified that when he arrived at the scene of the Kia crash, he noticed a white hockey mask and a red bandana in the vehicle. Agent Mollica then drove to the location where Walker was placed in custody, which was six to eight blocks, or less than five minutes' drive-time, from the crash site. Agent Mollica had previously received a copy via mobile phone of a surveillance photo of the robbers taken at the bank.

Agent Mollica learned that the property owner of the shed where Walker was detained did not know Walker and that Walker had no reason to be in the shed. After Agent Mollica notified the defendant that he was being arrested for bank robbery, Walker made incriminating statements

**James C. Mahan**
**U.S. District Judge**

- 2 -

to Agent Mollica. The defendant was transported to an FBI satellite office, where he provided a statement to agents after he was read his *Miranda* rights. Despite searching the area where Walker was arrested, police did not recover the money or backpack.

Mr. Walker is charged with three counts in the superseding indictment:[2] (1) criminal conspiracy in violation of 18 U.S.C. § 371; (2) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); and (3) using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(2). Walker filed a motion to suppress statements he made after his arrest and all evidence derivative of those statements. (Doc. # 24). The government filed a response (doc. # 28), and Walker filed a reply. (Doc. # 33). Walker argues that there was no probable cause for his warrantless arrest and argues the statements he made at the FBI field office and all derivative evidence should therefore be suppressed. (*See* doc. # 24). The government disagrees. (*See* doc. # 28).

Upon review of the defendant's motion, the evidence, and the parties' arguments, Judge Hoffman found that "[b]ased upon the totality of the facts available, . . . a prudent person would conclude that there was a fair probability, and therefore probable cause, that Walker committed the robbery." (Doc. # 45). Accordingly, he recommended that this court deny the motion to suppress. (*Id.*) Mr. Walker filed timely objections to the report and recommendation under Local Rule IB 1-4, arguing that he was arrested on mere suspicion, without probable cause.

## II. Legal Standard

### A. Objections to the recommendations of a magistrate judge

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation]

---

[2] The motion to suppress was filed with respect to the charges in the original indictment. (Doc # 12). After the motion was fully briefed and Judge Hoffman issued his report and recommendation, the government brought a superseding indictment before the grand jury. (Doc. # 85). The superseding indictment charges the same three crimes charged in the original indictment against the same two defendants, making only minor changes to the factual allegations supporting the charges. (*Compare* doc. # 12 *with* doc. # 85). The motion to suppress is therefore not moot, as the subject evidence is equally applicable to the charges in both indictments. The factual and legal questions that determine whether the evidence should be suppressed have not changed.

**James C. Mahan**
**U.S. District Judge**

- 3 -

to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen days from the date of service of the findings and recommendations. LR IB 3-2(a). Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen days after service of the motion. LR 7-2.

B. *Probable cause for a warrantless arrest*

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347, 352 (1967). Specifically, it "protects people, not places." *Id.* at 351. Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963). "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 US 366, 370 (2003); *see also Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (quotation omitted).

The information on which officers rely in forming their conclusions regarding probable cause must be "reasonably trustworthy." *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996) (quotation omitted). Arresting officers may rely on the probable cause developed by other officers. *United States v. Hensley,* 469 U.S. 221, 229-32 (1985). Absent probable cause, a warrantless arrest is illegal. *Buckner*, 179 F.3d at 837.

**James C. Mahan**
**U.S. District Judge**

- 4 -

### III. Discussion

The defendant does not object to any of Judge Hoffman's factual findings.[3] Instead, Mr. Walker objects to the judge's legal conclusions, arguing that he found probable cause for the arrest in the face of "[numerous] discrepancies" between the physical descriptions of Mr. Walker and the bank robbery suspect. (Doc. # 47 at 4).

Walker argues accurately that the surveillance photograph from the bank robbery provides no information about the hair, facial features, and height of the robbery suspects. (Doc. # 47 at 3). Walker also notes that Judge Hoffman found that the pants worn by Walker when he was found in the shed do not appear to be the same color as those in the surveillance photo. (*Id.*) Walker concedes, however, that the shoes he was found wearing do appear similar to the shoes worn by the suspects during the robbery. (*Id.*)

Walker suggests that given the lack of physical information and the apparent inconsistency in pant color, Judge Hoffman found probable cause "[j]ust because a black man [wa]s running through a neighborhood about [fourteen] miles away from the bank and several blocks away from [the lime colored Kia] that he was never seen exiting." (Doc. # 47 at 4).

Defendant's reliance on the evidence regarding the suspect's description is misplaced. The physical description of Mr. Walker is not the only evidence presented by the government that points to his involvement in the bank robbery. (*See* Doc. # 45 at 4). Moreover, most of the "discrepancies" identified by Walker are not discrepancies at all. It is true that the surveillance photo provided no information about height, facial features, or hair. However, there is no discrepancy with respect to those features—there is simply no comparison available at all. The only discrepancy between the suspect in the photo and Mr. Walker is the color of his pants, which he had an opportunity to change. Also, Mr. Walker's sneakers did, in fact, appear similar to those in the surveillance photo.

---

[3] Where a party fails to object to some portions of a magistrate judge's report and recommendation, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see* 28 U.S.C. § 636(b)(1). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna–Tapia*, 328 F.3d 1114 (9th Cir. 2003).

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    Beyond the suspect's physical description, additional evidence and testimony tend to
2  demonstrate a fair probability that Walker committed the bank robbery. For instance, when Metro
3  officers tracking the electronic device hidden in the proceeds of the robbery first made contact
4  with the lime-colored Kia shortly before the collision that resulted in defendant Bell's arrest, at
5  least one officer observed two black males in the vehicle. (*Id.* at 4). After apprehending defendant
6  Bell near the scene of the collision, officers also found both the red bandana and the white hockey
7  mask in the suspects' vehicle, which tends to confirm that both robbery suspects were in the
8  vehicle. (*Id.*)

9    Next, officers testified that immediately after confirming that the second suspect, the cash,
10 and the backpack in which it was removed from the bank were no longer in the vehicle, they found
11 that the electronic tracking device *was* showing movement in the area. (*Id.* at 2). That testimony
12 tends to show that the second suspect had recently left the vehicle, and was still in the area.

13   In response to the movement of the tracking device, police set up a perimeter to contain
14 the second suspect. (*Id.*) During that time, Metro began to receive calls from residents about a
15 suspicious black male who was jumping fences and hiding in the backyards of homes. (*Id.* at 4).
16 At least one caller indicated the black male was wearing a brown and white striped shirt—the same
17 clothing Walker was found in. (*Id.*) Officers began a search of the area within the perimeter,
18 involving several K-9 units. (*See* doc. # 28-4 at 1). Officer Jenkins and his K-9 partner located
19 defendant Walker hiding in the back yard of a shed approximately six to eight blocks from the
20 scene of the collision within the perimeter. (Doc. # 45 at 2).[4]

21   Tellingly, despite the fact that a perimeter was established around the area showing
22 electronic tracker movement, there was no testimony that other suspects matching the limited
23 physical description of the suspect were spotted or reported before Mr. Walker was taken into
24 custody. (*See* doc. # 45). The only testimony of suspicious behavior in the area at all are the

---

[4] The location of Mr. Walker's arrest is more precisely described as 'six to eight blocks from the location that the suspects' vehicle stopped,' than 'fourteen miles from the scene of the robbery.' (*Compare* doc. # 45 at 4 *with* doc. # 47 at 4).

**James C. Mahan**
**U.S. District Judge**

- 6 -

residents' reports of a black male whose description matched that of the suspect apprehended, defendant Walker. (*Id.*)

In sum, two suspects matching a limited physical description of the robbery perpetrators were contacted in a vehicle that appeared to contain the tracking device. Shortly thereafter and in close proximity, the vehicle collided with another vehicle, at which point in time one suspect and the electronic tracker were missing. The tracker was showing movement in the vicinity. A perimeter was established, and residents in a neighborhood within the perimeter began to report suspicious activity involving an individual matching the same physical description of the robbery suspects. An individual whose clothing matched a detailed description from the neighborhood reports was located, hiding in the backyard shed of a stranger.

Having reviewed the foregoing available facts, as well as Judge Hoffman's report and recommendation, the court finds that the arresting officers had probable cause to arrest defendant Walker for the bank robbery based on "reasonably trustworthy" information gathered in concert by the responding law enforcement officials. *See Maryland*, 540 U.S. at 370; *Hensley,* 469 U.S. at 229–32; *Butler,* 74 F.3d at 920. The court concludes that "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [defendant Walker] had committed [the bank robbery]." *See Buckner*, 179 F.3d at 837.

**IV.   Conclusion**

Based on the foregoing *de novo* review of the factual and legal conclusions underlying Judge Hoffman's report and recommendation, the court will adopt the report and recommendation in their entirety. Defendant Walker's motion to suppress will therefore be denied.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Magistrate Judge Hoffman's report and recommendation (doc. # 45) be, and the same hereby are, ADOPTED in their entirety.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

IT IS FURTHER ORDERED that defendant Deshawn Walker's motion to suppress evidence (doc # 24) be, and the same hereby is, DENIED.

DATED January 25, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**